Vernon S. KRIMMEL, Appellant,

v.

Frank X. HOPKINS, Warden, Nebraska State Penitentiary, Appellee.

No. 93–3534.

United States Court of Appeals,
Eighth Circuit.

Submitted April 13, 1995.

Decided May 30, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied
Aug. 1, 1995.

Andrew D. Strotman, Lincoln, NE, argued for appellant.

Kimberly A. Klein, Asst. Atty. Gen., Lincoln, NE, argued, for appellee (Donald A. Kohtz, on brief).

Before McMILLIAN and WOLLMAN, Circuit Judges, and NANGLE,* Senior District Judge.

McMILLIAN, Circuit Judge.

Vernon S. Krimmel appeals from a final judgment entered in the District Court[1] for

---

* The Honorable John F. Nangle, Senior United States District Judge for the Eastern District of Missouri, sitting by designation.

1. The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska,

adopting the report and recommendation of the Honorable David L. Piester, United States Magistrate Judge for the District of Nebraska.

the District of Nebraska, denying Krimmel's 28 U.S.C. § 2254 petition for a writ of habeas corpus. We originally filed an opinion in this case on January 13, 1995. However, because of a concern with the disposition, we vacated that opinion and *sua sponte* ordered a rehearing by the panel. For the reasons discussed below, we affirm.

## I. BACKGROUND

On November 5, 1982, the body of Louis Garland was discovered in his bathtub with multiple stab wounds in his neck and back. After learning that Krimmel had done odd jobs for Garland, police officers contacted Krimmel at his home on November 6, and Krimmel agreed to go to the police station for questioning. Police gave Krimmel *Miranda* warnings after Krimmel admitted that he had done some odd jobs for Garland. Police officers then misrepresented to Krimmel that they had found his fingerprints on the bathtub and had a witness who had seen him at Garland's house. Krimmel admitted that he was in Garland's house the day before and found Garland's body in the bathtub, but that he did not report the incident for fear of being implicated. When police officers asked Krimmel why he had killed Garland, Krimmel requested an attorney. A public defender arrived, spoke with Krimmel, and then told police officers Krimmel did not wish to talk to them further. Police officers then arrested Krimmel.

Krimmel asked police officers to retrieve his ulcer[2] medication from his mother. Police officers returned with the medication, but told Krimmel they would give him the medication after they talked with him further about the homicide "to clear up some new facts." Police officers gave Krimmel new *Miranda* warnings and reinitiated the interview. Krimmel then confessed to killing Garland in a fit of anger over Garland's homosexual advance. In an audio-taped statement, he also told the officers that a meter reader had seen him at Garland's house and that his friend helped him hide his blood-stained clothing, Garland's wallet, and other physical evidence (hereinafter referred to as the second statement). The deputy county attorney arrived and took a second audio-taped statement from Krimmel (hereinafter referred to as the third statement). Police obtained additional incriminating information from the friend Krimmel identified in his second statement.

At his state trial, Krimmel's counsel filed a motion to suppress only the first statement, which the state trial court denied. The prosecution did not introduce the second and third statements in its case-in-chief, but introduced other evidence derived from the second and third statements, e.g., the testimony of the friend and meter reader, the blood-stained clothing, and Garland's wallet. Krimmel's counsel did not object to the admission of this evidence.

After the State's case-in-chief, the state trial court held a conference in chambers on Krimmel's decision to testify. Krimmel's counsel advised Krimmel to testify because he thought his testimony would give him a better chance of a reduced charge, but he told Krimmel the second and third statements would be admissible on impeachment or rebuttal if he chose to testify. Krimmel took the stand and testified about his prior felony conviction and that he had lied in his statements to the police. The prosecutor cross-examined Krimmel on his inconsistent statements to police and then played the second and third recorded statements to the jury on rebuttal. The jury convicted Krimmel of first-degree murder, and the state trial court sentenced him to life imprisonment.

On direct appeal, Krimmel argued only that there was insufficient evidence to convict him and that the state trial court erred in admitting certain photographs. The Nebraska Supreme Court affirmed his conviction and sentence. *State v. Krimmel*, 216 Neb. 825, 346 N.W.2d 396 (1984). Krimmel filed a *pro se* state post-conviction petition claiming he was unlawfully arrested, was illegally interrogated, and received ineffective assistance of trial and appellate counsel. The

---

2. Although the trial transcript excerpts and police reports submitted in the record on appeal refer to Krimmel requesting his "ulcer" medi- cation, Krimmel asserts he was taking Haldol, a schizophrenia suppressant.

state court appointed counsel for Krimmel and conducted a hearing, at which Krimmel and his trial counsel testified. The state court denied post-conviction relief, and the Nebraska Supreme Court summarily affirmed.

Krimmel filed the instant habeas petition in federal district court, claiming that all three statements he gave to police and the evidence derived therefrom were fruits of an unlawful arrest, in violation of the Fourth Amendment; that the statements were obtained in violation of his Fifth and Fourteenth Amendment rights because the first statement was involuntary and was obtained before *Miranda* warnings were administered, and the second and third statements were obtained after police unlawfully reinterrogated him in violation of *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); that his Fifth Amendment rights were violated when police withheld his antischizophrenia medication as a means to reinterrogate him; that he was denied his Sixth Amendment right to effective assistance of trial counsel when counsel failed to create an adequate record at the suppression hearing, failed to object to the introduction of evidence derived from the tainted statements, improperly advised him to testify, failed to present evidence of his psychological problems, and failed to properly investigate the crime; that he was denied effective assistance of appellate counsel when appellate counsel failed to assert all these claims on direct appeal and to ensure a complete suppression hearing transcript was included in the bill of exceptions to the Nebraska Supreme Court; and that he was denied effective assistance of post-conviction counsel. Without holding an evidentiary hearing, the magistrate judge recommended denying as procedurally barred the Fourth Amendment and related ineffective-assistance-of-counsel claims, and denying all the other claims on the merits. The district court, adopting the recommendations of the magistrate judge over Krimmel's objections, denied habeas relief. This appeal followed.

## II. DISCUSSION

In most habeas corpus cases, the ubiquitous specter of procedural default overshadows our consideration of alleged constitutional violations. This case is no different. We note that on direct appeal to the Nebraska Supreme Court, Krimmel's counsel raised only two issues: the sufficiency of the evidence and the propriety of the prosecution's introduction of a number of graphic photographs of the murder victim. In his state postconviction motion, Krimmel, acting *pro se,* alleged several constitutional deficiencies with his conviction and a number of corresponding claims that his trial and appellate counsel were ineffective. The state postconviction court did not indicate, in its opinion denying relief, that any of the allegations were in any way barred from postconviction review because of Krimmel's failure to raise them on direct appeal.[3] Rather, the state court broadly stated that it found "there was no denial or infringement as to render the judgment void or voidable under the constitution of this state or the Constitution of the United States." *State v. Krimmel,* Doc. 114, No. 026 (Aug. 31, 1988) (Order). The unlimited language of the state court's disposition may have allowed Krimmel to argue he had obtained a review on the merits of all of his alleged errors, albeit to no avail. However, on appeal from this postconviction hearing to the Nebraska Supreme Court, Krimmel's appointed counsel only raised three of the many issues Krimmel alleged in his *pro se* petition for state postconviction relief. Those appellate issues were that (1) trial counsel provided ineffective assistance in that he failed to adequately consider Krimmel's psychological problems in determining his competency to stand trial, (2) appellate counsel provided ineffective assistance in failing to allege misconduct on the part of the prosecutor, and (3) the prosecutor who took Krimmel's third statement was guilty of prosecutorial misconduct.

"A prisoner seeking a writ of habeas corpus from a federal court must first fairly

---

**3.** *See State v. Dillon,* 224 Neb. 503, 507, 398 N.W.2d 718, 720–21 (1987) ("A motion for postconviction relief cannot be used to secure review of issues which have already been litigated on direct appeal, or which were known to the defendant and counsel at the time of the trial and which were capable of being raised, but were not raised, in the defendant's direct appeal.").

present his claims to the state courts in order to meet the exhaustion requirement of 28 U.S.C. § 2254(b)." *Forest v. Delo,* 52 F.3d 716, 719 (8th Cir. Mar. 28, 1995) (*Forest*). We have held repeatedly that a claim has not been fairly presented to the state courts unless the same factual grounds and legal theories asserted in the prisoner's federal habeas petition have been properly raised in the prisoner's state court proceedings. *See id.; Keithley v. Hopkins,* 43 F.3d 1216, 1217 (8th Cir.1995), *petition for cert. filed,* (May 3, 1995) (No. 94–1118). We have also held that a claim is considered exhausted "when the petitioner has afforded the highest state court a fair opportunity to rule on the factual and theoretical substance of his claim." *Ashker v. Leapley,* 5 F.3d 1178, 1179 (8th Cir. 1993).

■ In the present case, Krimmel, on direct appeal to the Nebraska Supreme Court, raised only two issues, neither of which form a part of his federal habeas petition. In his postconviction relief appeal before the state's highest court, he raised only the three issues cited above. While the state supreme court summarily affirmed the state district court's disposition of the postconviction motion, we can presume that it, like most appeals courts, only considered the alleged errors before it. *See State v. Lindsay,* 246 Neb. 101, 106, 517 N.W.2d 102, 106 (1994) (refusing to consider errors raised in postconviction motion to the state district court but not raised or discussed on appeal therefrom). Therefore, all other alleged errors which were raised in the motion for postconviction relief but which were not renewed on appeal to the state supreme court were procedurally defaulted.[4] In opposition to Krimmel's federal habeas petition, the State in fact argued procedural default barred Krimmel's claims. The Magistrate Judge, however, apparently focusing on the language of the state district court's opinion, did not recognize that Krimmel had

failed to re-assert all but three of his claims on appeal to the Nebraska Supreme Court.

■ Any new claims which Krimmel has made in his federal habeas petition are also procedurally defaulted, unless Krimmel can show adequate cause for his failure to raise them in the state courts and actual prejudice from the alleged constitutional violations, or if he can demonstrate that failure to review a claim would result in a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991) (*Coleman*); *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977); *Forest,* 52 F.3d at 719. Krimmel asserts that he was previously unable to present his claims of ineffective assistance of counsel relating to his trial counsel's failure to move to suppress his second and third statements to the police and the prosecutor and the evidence derived therefrom. To demonstrate cause for his failure to raise this claim in state postconviction proceedings, he contends that his appellate counsel failed to ensure that the bill of exceptions filed in the Nebraska Supreme Court on direct appeal included a transcript of the suppression hearing. He further argues that his trial counsel, in a deposition taken by postconviction counsel, incorrectly stated he had moved to suppress all three statements in that hearing when, in fact, the transcript of the suppression hearing shows trial counsel only moved to suppress the first statement made to police on the grounds there was a lack of voluntariness. Thus, the question before us is whether, on the facts of the present case, the absence of a transcript of the suppression hearing coupled with the inaccurate testimony of trial counsel is sufficient cause to overcome procedural bar. We hold that it is not.

In order to show cause for his default on this ineffective assistance claim, Krimmel

---

4. Krimmel argues on this appeal that, through his response to the State's motion for summary affirmance in the Nebraska Supreme Court on the state trial court's denial of postconviction relief, he effectively raised other issues which were not mentioned in his brief. While the rules of the Nebraska Supreme Court provide for the filing of objections to such motions, we believe that the rules do not intend these responses to be the vehicle through which additional assignment of error is achieved. *See State v. Lindsay,* 246 Neb. 101, 106, 517 N.W.2d 102, 106 (1994) (*Lindsay*) ("To be considered by an appellate court, a claimed prejudicial error must not only be assigned, but must be discussed in the brief of the asserting party."); *see also* Neb.Ct.R. of Prac. 7 B(4) and 9 D(1)(d) (West 1994).

must demonstrate some external impediment which prevented him from raising the issue in state court. *El–Tabech v. Hopkins,* 997 F.2d 386, 389 (8th Cir.1993), *citing McCleskey v. Zant,* 499 U.S. 467, 493, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991) (*McCleskey* ). Such objective external factors that may constitute cause include interference by officials that makes compliance with a state's procedural rules impracticable, or a showing that the factual or legal basis for a claim was not reasonably available to counsel. *McCleskey,* 499 U.S. at 494, 111 S.Ct. at 1470.

The only arguable external impediment to Krimmel's ability to raise a claim of ineffective assistance of counsel for his trial counsel's failure to move to suppress the second and third statements or the evidence derived therefrom was his failure, and the failure of his postconviction counsel, to obtain a transcript of the suppression hearing prior to the postconviction hearing. In *Forest,* the petitioner argued that the state's delay in providing him with a copy of the transcript of a plea hearing was sufficient cause to excuse his failure to raise a claim of judicial coercion in a state postconviction proceeding. 52 F.3d at 719. Although the court in *Forest* held there was not an adequate showing of cause for reasons irrelevant to the issue here, the record in that case did show that the petitioner had requested a transcript of the plea hearing in order to prepare for postconviction proceedings. *Id.* at 718. Clearly, in the present case, both Krimmel and his postconviction counsel were aware that the suppression hearing took place. In his motion for postconviction relief, Krimmel in fact noted that the suppression hearing took place on March 16, 1983. Appellant's Appendix at 43. There is, however, no evidence in the record to demonstrate that Krimmel or his postconviction counsel ever made a request for this transcript. Nor was there evidence that some type of official action or inaction made it impossible for them to obtain the transcript. The transcript was obviously avail-

able because Krimmel's federal habeas corpus counsel successfully procured it. If Krimmel or his postconviction counsel had made an effort to obtain the suppression hearing transcript or requested additional time in the state court in order to do so, he might have been able to show the kind of external impediment required. However, in the present case, unlike *Forest,* Krimmel was not hampered by a delay in the state's transcription of the hearing but by his own failure to attempt to acquire it. Further, postconviction counsel's failure to obtain the transcript and her mistaken reliance on trial counsel's recollection of the case cannot establish cause for procedural default. Postconviction counsel's conduct in this case simply does not rise to the level of an independent constitutional violation so as to constitute cause to excuse Krimmel's procedural default.[5] *See Coleman,* 501 U.S. at 754–55, 111 S.Ct. at 2567–68.

■ Of the issues that were raised on appeal to the state's highest court from the denial of state postconviction relief, two were not raised in the instant federal habeas petition. The claims of prosecutorial misconduct and ineffective assistance of appellate counsel for failing to allege this misconduct were not presented. The only claim which has arguably survived was Krimmel's allegation that his trial counsel was ineffective for failing to bring to the trial court's attention his serious psychological and psychiatric problems. With regard to this claim, the magistrate judge noted that the state postconviction court determined that Krimmel "was psychiatrically tested and based upon the evaluation, it was concluded that no psychiatric or insanity defense was available to Krimmel." *Krimmel v. Hopkins,* No. 4:CV91–3232, slip op. at 12 (D.Neb. July 7, 1993) (Report and Recommendation). The magistrate judge concluded that this finding was supported by the record and that Krimmel had not proffered any other information to the contrary. Thus, the magistrate judge recommended

---

**5.** We also note that Nebraska law provides for review of successive postconviction motions only if a subsequent motion "affirmatively shows on its face that the basis relied upon for relief was not available at the time the prior motion was filed." *Lindsay,* 246 Neb. at 106, 517 N.W.2d at

106. Thus, because we conclude that all of Krimmel's claims either were raised in his postconviction motion or could have been raised therein, there remains no non-futile state remedy for those claims which he failed to present to the Nebraska Supreme Court.

that relief be denied on the claim of ineffective assistance of trial counsel related to Krimmel's competence to stand trial. After careful review, we agree for the reasons stated in the magistrate judge's report and recommendation, as adopted by the district court. *Krimmel v. Hopkins,* No. 4:91CV–3232 (D.Neb. Sept. 21, 1993) (Memorandum and Order).

## III. CONCLUSION

We hold that Krimmel's claims, except for the claim of ineffective assistance of counsel discussed above, are barred by procedural default and that the procedural default is not excused by cause. We further hold that trial counsel was not ineffective for failing to challenge Krimmel's competence to stand trial.

Accordingly, the judgment of the district court is affirmed.